THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO
CIVIL DIVISION

PAMELA STANFORTH, :

    Plaintiff, :

     :

    v. : CASE NO: **16 CV 004290**

     :

     :

MOUNT CARMEL HEALTH SYSTEM, : JUDGE **O'DONNELL**

     :

    Defendant. :

### Consent to Amend Pleadings

Now comes the parties jointly under Rule 15(a) to give consent to Plaintiff to file her First Amended Complaint.

Respectfully submitted:

| | |
|---|---|
| By:   */s/ Samuel M. Schlein*<br>Samuel M. Schlein (0092194)<br>(sschlein@marshallandmorrow.com)<br>John S. Marshall (0015160)<br>(jmarshall@marshallandmorrow.com)<br>Edward R. Forman (0076651)<br>(eforman@marshallandmorrow.com)<br>MARSHALL AND MORROW LLC<br>250 Civic Center Dr., Suite 480<br>Columbus, Ohio 43215-5296<br>(614) 463-9790<br>Fax (614) 463-9780 | By: *derby/s/ Alison Day (e-mail consent 12/19/16)*<br>Alison M. Day (0068060)<br>aday@littler.com<br>Kevin E. Griffith (0037297)<br>kgriffith@littler.com<br>LITTLER MENDELSON, P.C.<br>21 East State Street, 16th Floor<br>Columbus, OH 43215<br>Telephone: 614.463.4201<br>Facsimile: 614.221.3301 |



EXHIBIT B

THE COURT OF COMMON PLEAS
FRANKLIN COUNTY, OHIO
CIVIL DIVISION

| | | |
|---|---|---|
| PAMELA STANFORTH, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CASE NO: **16 CV 004290** |
| | : | |
| | : | |
| MOUNT CARMEL HEALTH SYSTEM, | : | JUDGE **O'DONNELL** |
| | : | |
| Defendant. | : | Jury Demand Enclosed Hereon |

## First Amended Complaint

### I. Preliminary Statement

1. This action seeks monetary, declaratory and equitable relief for the violations of Ohio's Laws Against Discrimination ORC 4112.99 and Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34, committed when Mount Carmel Health Systems (Defendant or St. Ann's), terminated Ms. Stanforth's employment because of her age. Shortly after Ms. Stanforth informed her manager that she would not be retiring in the immediate future, the manager systematically papered Ms. Stanforth's personnel file with discipline and ultimately terminated her for not seeing the manager's vision.

### II. Jurisdiction and Venue

2. This Court has jurisdiction over this action under R.C. 2305.01 and the common law of the State of Ohio.

3.	This Court has concurrent jurisdiction pursuant to the ADEA, 29 U.S.C. § 626(c), Plaintiff filed a timely charge with the Equal Employment Opportunity Commission on May 18, 2016.

4.	Wages, salary, employment benefits, and other compensation denied or lost to Plaintiff because of Defendant's violation and interest on those damages may be awarded pursuant to the ADEA, 29 U.S.C. § 626(b); (c).

5.	An additional amount in liquidated damages equal to the sum of wages, salary, employment benefits, and other compensation denied or lost to Plaintiff plus interest may be awarded pursuant to the ADEA, 29 U.S.C. § 626(b), incorporating by reference 29 U.S.C. § 216(b), because Defendant's violation of the ADEA was willful.

6.	Declaratory, injunctive, and equitable relief, including reinstatement, are sought pursuant to 28 U.S.C. §§ 2201; 2202, and the ADEA, 29 U.S.C. § 626(b); (c).

7.	Costs and attorneys' fees may be awarded pursuant to the ADEA, 29 U.S.C. § 626(b),

8.	Venue lies in this forum because Plaintiff was employed by Defendants in Franklin County, Ohio worksite and most of the events giving rise to her claims against both Defendants occurred there.

### III. Parties

9.	Plaintiff Pamela Stanforth is 64 years old, and was 63 years old at the time of her termination. Ms. Stanforth was hired by Defendant in September 2010, as a Sterile Processing Manager. At all times she performed her job at a high level, and was terminated on November 6, 2015 based on her manager's discriminatory animus against older workers.

10. Defendant Mount Carmel Health Systems is an Ohio non-profit corporation that operates several hospitals and health care centers in Central Ohio. One of the facilities that Defendant operates is Mt. Carmel St. Ann's hospital, where Ms. Stanforth was employed.

IV. **Facts**

11. Prior to Ms. Stanforth's employment with Defendant, she amassed over twenty years' of industry experience at various other hospitals and health providers.

12. Because of her experience and credentials, Ms. Stanforth was recruited by Defendant's Director of surgical services Patrick Baker.

13. After accepting employment with Defendant in late 2011, Ms. Stanforth enhanced her credentials by training for and receiving certification in CHL and CRST.

14. Over the first several years of Ms. Stanforth's employment with Defendant, she reported to several different supervisors. Each of her supervisors provided her with positive feedback, and she oftentimes received "above expectations" on her performance evaluations.

15. Moreover, Ms. Stanforth would routinely receive performance based pay increases on the recommendation of her supervisors.

16. In 2014, Ms. Stanforth was nominated for the employee of the year award at St. Ann's, to recognize her strong performance and the money that she had saved Defendant.

17. In addition to the recognition that Ms. Stanforth received for her work at Defendant's St. Ann's hospital, Ms. Stanforth and another Sterile Processing manger were asked to work with Defendant's Mt. Carmel West facility to help correct issues that had been occurring at that location.

18. Ms. Stanforth was asked to spend up to three days per week correcting issues at Defendant's Mt. Carmel West facility, while maintaining standards at St. Ann's.

19. In late 2014, Defendant experienced another change in management at St. Ann's. Tobi Watt was promoted and became Ms. Stanforth's supervisor. Ms. Watt is substantially younger than Ms. Stanforth.

20. After working for a short time with Ms. Watt, Ms. Stanforth realized that Ms. Watt displayed stereotypical views of workers over the age of 60.

21. When Ms. Stanforth was in the process of terminating a 61 year old subordinate, Ms. Stanforth took steps to ensure that she was following all of Defendant's termination procedures.

22. During a meeting with Ms. Watt about the termination process, Ms. Watt expressed that she was angered that Ms. Stanforth was taking so long to terminate the employee.

23. Ms. Stanforth explained that with older workers it was important to follow Defendant's procedures because she did not want any appearance of discrimination. Ms. Watt became agitated and dismissed Ms. Ms. Stanforth's contention.

24. After this interaction, Ms. Watt and Ms. Stanforth continued their relationship in a professional manner. In July 2015, Ms. Watt evaluated Ms. Stanforth's performance. Again, Ms. Stanforth received high marks, and a performance based pay increase.

25. In late August 2015, Ms. Watt and Ms. Stanforth were having a routine conversation. During the conversation, Ms. Watt asked Ms. Stanforth if she had plans on retiring "anytime soon."

26. Ms. Stanforth responded that she would like to work for Defendant for at least an additional four years, and likely longer, as she enjoyed her job and her staff.

27. After this conversation occurred, the relationship between Ms. Watt and Ms. Stanforth begin to sour.

28. Ms. Watt would say words to the effect of, "you're (Ms. Stanforth) not a good fit here" or "you're not seeing the vision" and "I (Ms. Watt) just don't think you're getting it."

29. After a month or so of these comments, Ms. Watt placed Ms. Stanforth on a 90-day performance improvement plan on September 21, 2015.

30. Ms. Stanforth worked diligently to meet each of the goals of her performance improvement plan, despite the fact that many of the goals were subjective goals.

31. On October 22, 2015, Ms. Watt and Ms. Stanforth met to discuss Ms. Stanforth's work on the performance improvement plan. Ms. Stanforth showed Ms. Watt that she was scheduling and participating in meetings that Ms. Watt had instructed her to, and was otherwise on track to complete the goals of the plan.

32. Ms. Watt did not respond positively to Ms. Stanforth and stated that Ms. Stanforth still had considerable work to do to complete the plan.

33. On November 6, 2015, Ms. Watt called Ms. Stanforth in to her office to discuss the performance improvement plan again.

34. Ms. Watt stated that Ms. Stanforth was still not improving and not "seeing the vision." Ms. Watt stated that Ms. Stanforth would be terminated, but that she could choose within 30 minutes to tender her resignation so her (Ms. Stanforth) record would not reflect a performance based termination.

35. Ms. Stanforth, concerned about how a termination would impact her future job prospects, chose to resign from Defendant in lieu of termination.

36. After Ms. Stanforth was terminated, she learned that she was replaced by Noel Natale, 31 years old, an employee who Ms. Stanforth hired and trained.

37. Even though Ms. Stanforth has exercised reasonable diligence in an effort to secure employment comparable to her former position, Ms. Stanforth has not been able to secure such employment.

38. As a direct and proximate result of her termination, Ms. Stanforth has suffered and continues to suffer from emotional distress and a significant reduction in the enjoyment of life.

39. In terminating Ms. Stanforth, Defendant acted with gross disregard towards her right to remain free from discrimination.

## V. Cause of Action

### First Cause of Action Violation of Ohio Laws Against Discrimination

40. Paragraphs 1 through 39 are incorporated herein as if fully set forth.

41. By terminating Plaintiff because of her age, Defendant violated Ohio's Laws Against Discrimination ORC 4112.99.

### Second Cause of Action Violation of the Age Discrimination in Employment Act

42. Paragraphs 1 through 39 are incorporated herein as if fully set forth.

43. By terminating Plaintiff because of her age and because of its discriminatory animus against older workers and acting with reckless disregard of her statutory right to that equal opportunity, Defendant willfully violated the ADEA

## VI. Prayer for Relief

WHEREFORE, Plaintiff is entitled to and prays for the following relief:

A. declaration that Defendant has violated the Ohio's Laws Against Discrimination;

B. declaration that Defendant has violated the ADEA

C. equitable relief of promotion with expungement of her personnel file;

D. wages, salary, employment benefits, and other compensation denied or lost to him, exceeding $25,000, because of Defendant's violation;

E. liquidated damages in an amount equal to the sum of wages, salary, employment benefits, and other compensation denied or lost to him, plus prejudgment interest

E. compensatory damages exceeding $25,000.00, punitive damages in an amount exceeding $25,000.00

F. prejudgment and postjudgment interest:

G. costs and attorneys' fees; and

H. such other relief as the Court deems fair and equitable.

Respectfully submitted

OF COUNSEL:
Louis A. Jacobs (002101)
(LAJOhio@aol.com)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

By: /s/ Samuel M. Schlein
Samuel M. Schlein (0092194)
(sschlein@marshallandmorrow.com)
John S. Marshall (0015160)
(jmarshall@marshallandmorrow.com)
Edward R. Forman (0076651)
(eforman@marshallandmorrow.com)
MARSHALL AND MORROW LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

## JURY DEMAND

Plaintiff demands a trial by jury on all issues and defenses triable to a jury.

By: /s/ Samuel M. Schlein
Samuel M. Schlein (0092194)

## CERTIFICATE OF SERVICE

On December 19, 2016, the undersigned submitted a copy of the foregoing for electronic filing which will constitute service on all registered users pursuant to Civ. R. 5(B)(2)(f).

By: /s/ Samuel M. Schlein
Samuel M. Schlein (0092194)